[No. 4003.]

## The People ex Rel. The Colorado Bar Association v. George Varnum.

1. Attorney and Client—Legal Advice—Fees.

Where a party called twice upon an attorney at law at the attorney's invitation and upon other business than that connected with the legal profession, and while in the attorney's office casually asked some questions relating to matters of law, there was no such employment or asking for legal advice as would authorize the attorney to charge a fee therefor.

2. Attorneys at Law—Fictitious Bill—Blackmail—Disbarment.

Where an attorney at law made a fictitious charge for legal services against an officer of the regular army and rendered a bill therefor itemized as follows: "To consultation in re evading pawnbrokers' act, city ordinances, state laws, etc. In loaning money on pledges, criminal liability under state laws for acts done on U. S. reservation," the wording of the bill clearly indicates a purpose upon the part of the attorney, unless his bill was paid, to make an accusation against the officer or to disclose the fact that he had been engaged in questionable practices in violating or attempting to evade the laws of the state, which were of a character that would have tended to lower him in the estimation of his brother officers, friends and the public, and constitutes blackmail as defined in section 1304 Mills Ann. Stats. For such conduct the attorney will be disbarred.

*Original Proceedings in Disbarment.*

Mr. D. M. Campbell attorney general, Mr. Calvin E. Reed assistant attorney general, Mr. Edward L. Johnson

and Mr. JOHN D. FLEMING for petitioner.

Mr. RALPH E. STEVENS for respondent.

*Per Curiam.*—The charge in this case is that respondent attempted to blackmail P. D. Lochridge, a lieutenant in the regular army. The averments on which this charge is based are, in substance, that respondent made a false and fictitious claim against Mr. Lochridge for alleged professional services rendered, and in order to extort payment, sent him a bill therefor so worded that it conveyed a covert threat that unless paid, Lochridge would be disgraced in the estimation of his brother officers, friends. and the public, by an exposure of conduct on his part discreditable to him as an officer and a gentleman, of which he was entirely innocent, and which was wholly the invention of respondent. The defense of respondent is, that Lochridge employed him in his professional capacity; that he rendered the services mentioned in the bill sent, and that it was not intended thereby to convey any threat, covert or otherwise, that unless paid the business in which Lochridge was engaged and in relation to which the items of the bill referred, would be exposed. On the issues thus made evidence has been taken and submitted for our consideration, to determine the facts.

The vital question of fact in issue is, whether or not Mr. Lochridge employed respondent in his professional capacity to advise him with respect to the matters mentioned in the itemized bill rendered. Relating to this subject direct, there is no testimony, except that of Lieutenant Lochridge and the respondent. How they came to meet is important in some respects, and we notice the evidence bearing on that question briefly. It appears that Mr. Lochridge called on respondent in response to an invitation from the latter to examine certain diamonds, which had been offered as collateral security for a loan. The parties could not agree, and

nothing was effected.  It is stated by Lieutenant Lochridge that he expressly informed respondent at this interview that he would not make a loan, but would buy the stones if they could be purchased at a reasonable figure.  Respondent says that the offer made by Lieutenant Lochridge was to loan, but that the amount he offered was not satisfactory.  About a week later a second interview took place between them, which was brought about by a postal from respondent to Mr. Lochridge, stating that he had concluded to add another stone.  No arrangement was effected between the parties at this interview.  The parties do not agree as to whether the offer made by Mr. Lochridge at this time was to purchase the diamonds or make a loan on them; but this we deem immaterial.  It was at this interview, according to the testimony of respondent, that he rendered the services mentioned in the bill which he later sent to Mr. Lochridge.  The testimony of the latter is, that he rendered no such services, and that he never asked him for any advise whatever.  On this subject the testimony of respondent is in substance, that after they failed to agree regarding the amount of the loan, the diamonds were put away, and Mr. Lochridge then asked respondent if an army officer could be prosecuted in state courts for violation of a state law, and also whether he could be prosecuted for an act done on the reservation; that he then answered those questions, but stated that he did not care to advise positively, regarding the latter matter, without a further examination, as there might be some federal statute on the subject; that he would look this matter up and let him know later, to which Mr. Lochridge simply said "Yes"; that Mr. Lochridge then referred to the pawnbrokers' act, and upon being shown a copy, asked questions respecting the law in detail, which respondent went through carefully, explaining it to him fully; that some other questions were asked by Lochridge, regarding the effect of a bill of sale, where chattels, the possession of which could be delivered,

had been pledged for a loan, all of which were answered.

The last interview between these parties occurred a few days later, which, according to the evidence of respondent, is that Mr. Lochridge called at his office, and he commenced to tell him that he had looked up the other questions, when Lochridge interrupted him, saying he would see him again, and went out.

The entry on respondent's book of the charge against Lochridge, so he says, was made about the 13th day of January, 1898, and after the last interview. It is itemized substantially as it appears upon the bill rendered. This bill, omitting the heading, reads as follows:

"To consultation in re evading pawnbrokers' act—city or-dinances—state laws, etc. In loaning money on pledges, criminal liability under state laws for acts done on U. S. Reservation—right of party to redeem goods on which loan is made when bill of sale is given—passing on and sufficiency of forms—$100.00."

The entry on respondent's book is at page 148. This book, he says, contains all the accounts with his clients for business transacted at his office. Pages 145 and 146 are missing from this book. Respondent says that he does not know when or by whom the leaf containing those pages was torn out. With one or two exceptions the entries on this book are very brief in their nature, and but very few of them seem to have any relation to what may be termed legal business.

The evidence of R. J. Forhan, a dentist, has been taken on behalf of respondent. The object of this testimony, we should judge, is to establish the fact that Lieutenant Loch-ridge was, in fact, engaged in the loaning of money on diamonds at a high rate of interest. We do not believe it is necessary to determine whether this contention on the part of respondent is true or not. It seems that some time prior to the meeting between respondent and Mr. Lochridge, the

latter had a business transaction with Dr. Forhan, which the doctor claims was a loan on a watch and diamond, while the testimony of Lieutenant Lochridge is that he purchased them. Shortly after the second interview between respondent and Mr. Lochridge, Dr. Forhan, according to his testimony, endeavored to negotiate a loan with Mr. Lochridge on the same diamonds. A misunderstanding appears to have arisen between the doctor and Mr. Lochridge about this time. It did not occur, nor was there any controversy regarding the character of their first transaction, or any dispute relating to it, until after the second interview between the respondent and Mr. Lochridge. According to the testimony of the doctor, the trouble was caused by the claim of Mr. Lochridge that the amount advanced on the watch and diamond—whether sale or loan—was more than they were worth, or that he, the witness, did not intend to redeem them. The doctor and Mr. Lochridge finally settled this matter. The doctor produced a book, which he claimed contained a record of his diamond transactions, and of the particular diamond upon which he claims to have negotiated a loan with Mr. Lochridge. It also purports to contain a record of the diamonds which respondent had in his possession at the first two interviews he had with Mr. Lochridge, and upon which, according to the claim of the doctor, he tried to negotiate a second loan. A portion of the bottom of the respective pages containing a record of transactions connected with these diamonds has been cut out; the lower portion of other pages in this same book which contain a record of similar transactions, has also been removed. His explanation of this mutilation is, that in measuring teeth for crowns he does so with a string, which he afterwards lays upon a card, or, as in this instance, upon a note book, which he cuts to correspond with the measure taken. On some, not so mutilated, there appears, following the inception of the record of the transaction, an entry to the effect

that the jewels referred to on the page have been sold.

It appears that under military regulations, officers in the regular army are taught the law relative to their liability to prosecution in state courts, and the jurisdiction of military and civil courts over United States military reservations.

Does this evidence establish the existence of the relation of attorney and client between respondent and Mr. Lochridge? On such evidence no court or jury would say that it did, if respondent were attempting to enforce collection of his bill in a suit at law. The purpose of the lieutenant in calling on respondent at the first and second interviews was not to obtain advice from the latter, or employ him in the capacity of an attorney. He came there at his solicitation, for an entirely different purpose. When they failed to agree regarding this matter, a conversation of a general nature seems to have occurred between them. Take the testimony of respondent only, and it appears that if Lieutenant Lochridge did interrogate respondent regarding the matters mentioned in the bill, it was only in a casual way; nothing had occurred which would indicate to respondent that it was the intention of Mr. Lochridge to ask him for legal advice, which would impose upon him the obligation to pay therefor, further than the mere fact that he asked the questions which respondent claims he did. If he had intended to employ respondent in his professional capacity with respect to the items charged in the bill, he would certainly have indicated in some way his intention to that effect. They were strangers; respondent was trying to negotiate a loan. It is improbable that Lochridge would seek advice from one who was so interested in the questions regarding which it is claimed he sought information. A careful reading of the evidence of respondent clearly indicates to our mind that whatever questions the lieutenant may have asked him were in the way of a general conversation, and that in the circumstances detailed, he understood that he was not giving advice

which the lieutenant expected to pay for. As further proof of this fact, we have the book of respondent from which a leaf is missing, the absence of which is not satisfactorily accounted for. The record which he makes in this book of this transaction is so different from nearly all others there recorded, that it carries upon its face the stamp of untruth Again as to some of the matters mentioned in the bill, the lieutenant was doubtless as fully informed as respondent. At the time of the second interview between respondent and Mr. Lochridge, it appears that no dispute of any kind or character had arisen between Mr. Lochridge and Dr. Forhan; so that no reason is disclosed from the testimony why Mr. Lochridge would want any advice touching a transaction regarding which there was no controversy, and the theory upon which this testimony was introduced is not sustained. Mr. Lochridge had effected no arrangement with respondent, because they were unable to agree upon the amount of money which the latter claimed he must have for the diamonds in his possession. He had expressed no fear of making a loan instead of a purchase because thereby he might be violating the laws of the state; so that taking the testimony independent of what Mr. Lochridge himself says, it is apparent that he had no reason or motive for inquiring about the pawnbrokers' act, or whether he could be prosecuted under such laws for an act done on the reservation. The testimony of Dr. Forhan does not impress us as being entitled to much weight. The mutilation of his book is not satisfactorily explained, and leaves the impression that portions of it have been removed for the express purpose of suppressing something which may have been material in tending to disprove the facts upon which respondent relies as a defense to this proceeding. It may be true that the measures for gold crowns to teeth are taken in the manner which this witness indicates, but it is highly improbable that in doing so he would mutilate records of business transactions,

The bill rendered by respondent shows upon its face that the charge made was not in good faith. If, as contended by respondent, he rendered the services claimed, he would not have deemed it necessary to have itemized the bill in the manner he did, even if his alleged client had been attempting to ascertain how the laws of this state might be evaded. An attorney, in rendering a bill, if the transaction was *bona fide*, would not have found it necessary to remind his client that he had been engaged in questionable transactions, or was seeking in some way to violate the criminal statutes of the state, without incurring any liability therefor. Further, if respondent had rendered the services claimed at the instance of Mr. Lochridge, and at his request, in the usual course of business, he would have made a charge commensurate with such services, instead of the exorbitant one that he did. We are convinced from the testimony, taken as a whole, that respondent never rendered any services whatever, for which he could legally make a claim against Mr. Lochridge, or which, as an attorney, under the most liberal construction given the testimony, he ever understood imposed any obligation on Mr. Lochridge to pay for.

The only remaining question is, whether or not the testimony and the facts as found warrant the conclusion that respondent has been guilty of the crime of blackmail, for that is the gravamen of the charge made against him. The claim of respondent being wholly fictitious and without any foundation, the wording of the bill rendered, clearly indicates a purpose upon his part, unless his bill was paid, to have made an accusation against Lieutenant Lochridge, or to disclose the fact that he had been engaged in questionable practices in violating the laws of this state, or in attempting to evade them, which were of a character that certainly would have tended to lower him in the estimation of his brother officers, friends and the public, This was clearly the idea which the wording of the bill was intended to con-

vey, and upon which respondent relied to extort payment of his fictitious and preposterous charge. This constitutes blackmail, as defined by the section of our criminal code on that subject, which reads:

"If any person shall knowingly send or deliver any * * * writing threatening to accuse another of a crime or misdemeanor, or to expose or publish any of his infirmities or failings, with intent to extort money * * * such person so offending shall, on conviction, be fined in a sum not exceeding five hundred dollars, and imprisonment not exceeding six months." 1 Mills Ann. St., sec. 1304.

Such conduct on the part of an attorney, in attempting to take advantage of his position at the bar, and who, under the guise of having rendered professional services, seeks to extort money from another in this way, is reprehensible in the extreme. It involves moral turpitude in that degree and of that character that any person guilty of such conduct should not be entitled to hold a certificate which authorizes him to practice as an attorney and counsellor at law in this state. It is ordered that the name of respondent be stricken from the roll of attorneys.